# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JIMMIE W. DAVIS, individually
and as TRUSTEE of the JIMMIE
W. DAVIS REVOCABLE TRUST,

      Plaintiff,

v.                                                                        CV 10-883 JEC/WPL

ST. ANSELM EXPLORATION CO.,
a Colorado Corporation, ANNA M.R.
WELLS, and MARK S. PALMER,

      Defendants.

## ORDER

This matter is before me on Plaintiff Jimmie Davis' Motion for Judgment on the Pleadings (Docs. 23-24), Defendants' Motion for Leave to File a Surreply to the Motion for Judgment on the Pleadings (Doc. 41), Defendants' Motion to Set a Telephonic Conference to modify discovery deadlines (Doc. 69), and Davis' Motion for a Protective Order (Doc. 47). For the following reasons, (1) Defendants' Motion for Leave to File a Surreply is granted; (2) Davis' Motion for Judgment on the Pleadings is converted to a motion for summary judgment and will be held in abeyance until the parties have conducted limited discovery as described herein and presented pertinent materials; (3) Defendants' Motion to Set a Telephonic Conference is granted; and (4) Davis' Motion for a Protective Order is granted in part, as described herein.

### BACKGROUND AND OVERVIEW

Davis filed the present suit individually and as trustee of the Jimmie W. Davis Revocable Trust (the Trust) to recover on two Promissory Notes issued by Defendant St. Anselm Exploration

Company (St. Anselm) to the Trust and personally guaranteed by Defendants Anna Wells and Mark Palmer. (Doc. 16.) Defendants have admitted that St. Anselm breached the terms of both Notes and that St. Anselm, Wells, and Palmer are jointly and severally liable for the principal, interest, and costs of collection of both Notes. (Doc. 18 at 5-6, ¶¶ 25-26).

After the parties reached a negotiated settlement, all discovery in this case was stayed upon the parties' joint motion. (Docs. 20, 23.) The parties intended to dismiss the case on June 1, 2011 after the settlement agreement had been performed, (Doc. 20 at 1), but the settlement agreement fell through shortly after the stay. At a status conference held on February 11, 2011, I permitted Davis to file a Motion for Judgment on the Pleadings but did not lift the stay on discovery.[1] (Docs. 22, 37.) Davis filed the motion soon thereafter. (Doc. 23.)

In response, Defendants have asked this Court to convert the Motion for Judgment on the Pleadings to a motion for summary judgment and to wait to rule until Defendants have conducted limited discovery as to a potential defense. (Doc. 26 at 2, 4.) Specifically, Defendants allege that Davis may have misrepresented in a Subscription Booklet pertaining to the Notes that the Trust was an "accredited investor." (Doc. 26 at 3.) Federal securities laws provide that a trust must have "total assets in excess of $5,000,000" to be an accredited investor. 17 C.F.R. § 230.501(a)(7). Defendants state that St. Anselm issued promissory notes only to accredited investors so that it could be exempt from registration under federal and state securities laws.[2] (Doc. 57 at 2.) Consequently, Defendants

---

[1] I lifted the stay on discovery on March 28, 2011 upon the Defendants' motion and Davis' consent. (Doc. 37.) At this time, I reiterated that the Motion for Judgment on the Pleadings had not been filed in violation of the stay. (*Id.*) This ruling rendered moot portions of the parties' briefs that dispute whether the Motion for Judgment on the Pleadings was filed in violation of the stay. (Doc. 26 at 2-3; Doc. 34 at 3-5.)

[2] 15 U.S.C. § 77(e), which requires sellers and buyers of securities to file a federal registration statement, does not apply to "transactions involving offers or sales by an issuer solely to one or more accredited investors" if certain other requirements are met. 15 U.S.C. § 77(d).

2

contend that St. Anselm would not have issued promissory notes to the Trust if it had known the Trust was not accredited.  (*Id.*)  Defendants also argue that Davis breached warranties in the Subscription Booklet if he misrepresented that the Trust was an accredited investor.  (Doc. 26 at 3.) Defendants have filed an affidavit pursuant to FED. R. CIV. P. 56(d) that discusses how limited discovery into the accreditation issue will enable Defendants to acquire facts that may produce a defense to Davis' claims.  (Doc. 26, Ex. 2.)

In reply, Davis argues that the Motion for Judgment on the Pleadings should not be converted because Defendants' requested discovery could not produce a meritorious defense as a matter of law.  (Doc. 34 at 5-9.)  Davis contends that under the reasoning of two No-Action Letters issued by the Securities and Exchange Commission (SEC), the Trust was an accredited investor as long as Davis, as the sole grantor and source of funding for the Trust, had a net worth above $1,000,000.  (*Id.* at Exs. 3-4.)  As a result, Davis argues that discovery into whether the Trust had more than $5,000,000 in assets is needless because it would not produce a claim upon which relief can be granted.  (*Id.* at 5.)  Davis' counsel also asserts that Defendants would have no defense regardless of whether this Court followed the No-Action Letters because the Trust did have more than $5,000,000 in assets at all times relevant to this dispute.  (*Id.* at 7, 9.)

Defendants have moved for leave to file a Surreply to the Motion for Judgment on the Pleadings.  (Doc. 41.)  In the motion, Defendants contend that Davis raised issues in his reply that do not appear in his Motion for Judgment on the Pleadings and that necessitate a surreply by Defendants.  (*Id.*)  In their proposed Surreply, Defendants primarily argue that the SEC's No-Action Letters do not establish that the Trust was an accredited investor due to Davis' net worth because the No-Action Letters are not binding on federal courts.  (Doc. 41, Ex. 1 at 2.)  Defendants also argue that the unsworn assertions in Davis' reply are insufficient to establish that the Trust

3

maintained assets above $5,000,000 and maintain that Defendants are entitled to limited discovery into the matter.  (*Id.* at 2-3.)  Finally, Defendants note that Davis has initiated formal discovery into the accreditation issue and argue that they should not be prevented from doing the same.  (*Id.* at 3.)  In a response to this motion, Davis argues that the Court should not consider Defendants' Surreply.  (Doc. 45.)

After these pleadings were filed, Davis filed a Motion for Protective Order to prevent Defendants from deposing Davis until and unless the Motion for Judgment on the Pleadings is denied.  (Doc. 47.)  Davis asks this Court to forbid such a deposition pursuant to FED. R. CIV. P. 26(c)(1) as an event that would entail "annoyance, embarrassment, oppression, or undue burden or expense."  In response, Defendants repeat many of the arguments raised in their response to the Motion for Judgment on the Pleadings and state that a deposition of Davis is necessary to establish whether the Trust was an accredited investor.  (Doc. 57.)   Defendants also argue that even if this Court finds that Davis is entitled to some relief under FED. R. CIV. P. 26(c), this Court should narrow the permissible scope of his deposition rather than forbidding it altogether.  (*Id.* at 14-17.)

The final motion before me is an opposed Motion to Set a Telephonic Conference to modify discovery deadlines, filed by Defendants.  (Doc. 69.)  In this motion, Defendants argue further that they are entitled to limited discovery into whether Davis misrepresented that the Trust was an accredited investor.  (*Id.* at 4.)  Defendants state that they wish to both depose Davis and serve written discovery requests on this issue.  (*Id.* at 3.)  Because Davis has opposed Defendants' discovery and because discovery terminated on May 31, 2011 pursuant to my Scheduling Order, (Doc. 9), Defendants request a telephonic status conference to consider and set new discovery deadlines.  In a response, Davis argues that discovery deadlines should not be modified.  (Doc. 75.)

Because all of these motions revolve around the same dispute, I will consider them together.

4

### Motion for Leave to File a Surreply

I will first consider whether Defendants' Surreply to the Motion for Judgment on the Pleadings should be admitted into the record.  D.N.M.LR-Civ. 7.4(b) permits parties to file surreplies when leave is granted by the Court.  The Tenth Circuit has stated that when a movant's reply raises new evidence or legal arguments, the nonmoving party should generally be given the opportunity to respond to the new material.  *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).  When a district court accepts a reply brief with such new material, it must either permit a surreply or disregard the new material in deciding the motion.  *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1163-65 (10th Cir. 1998).  However, a motion seeking leave to file a surreply is properly denied when the reply "contain[s] no new information to which [the non-movant needs] the opportunity to file a surreply."  *Lopez v. Garcia*, 1 F. Supp. 2d 1404, 1406 (D.N.M. 1997).

I find that Davis' Reply contains new legal arguments that were not presented in his Motion for Judgment on the Pleadings.  The majority of the Reply is devoted to legal arguments based on two SEC No-Action Letters that are attached to the Reply.  (Doc. 34 at 2, 5-9 & Exs. 3-4.)  Davis argues that the "matters addressed in Plaintiff's reply . . . were presented for the first time in Defendants' response," but this is simply not true.  (Doc. 45 at 3.)  Defendants did request permission for the first time to conduct limited discovery into whether the Trust was an accredited investor, but Davis replied with new legal arguments deriving from previously uncited No-Action Letters that he claims are "determinative."  (Doc. 34 at 6.)  Rather than disregarding Davis' new arguments, I find it more expedient to consider them together with the counterarguments raised in Defendants' Surreply.

For the foregoing reasons, Defendants' Motion For Leave to File a Surreply is granted and the Surreply is admitted into the record.

**MOTION FOR JUDGMENT ON THE PLEADINGS**

The next issue I will consider is whether Davis' Motion for Judgment on the Pleadings should be converted to a motion for summary judgment and, if so, whether the parties should be permitted to conduct discovery and present new materials before the motion is resolved.  Aside from arguing for conversion and limited discovery, Defendants do not present any other reasons why the Motion for Judgment on the Pleadings should not be granted.

FED. R. CIV. P. 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  Judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Park Univ. Enters. v. Am. Cas. Co. of Reading, Pennsylvania*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation and quotation marks omitted).  However,

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

FED. R. CIV. P. 12(d).  "Courts have broad discretion in determining whether or not to accept materials beyond the pleadings" and thereby convert a motion to one for summary judgment.  *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366, at 265 (1990)).

I find that the factual issue raised by Defendants, whether Davis misrepresented that the Trust was an accredited investor, should be considered in deciding Davis' Motion for Judgment on the Pleadings.  Because this matter is unresolved and cannot be determined on the pleadings, Davis

is not entitled to judgment on the pleadings, *Park Univ.*, 442 F.3d at 1244, and his motion shall be converted to a motion for summary judgment.  FED. R. CIV. P. 12(d).

In the context of a pending motion for summary judgment, a separate rule enables nonmoving parties to ask the court to permit further discovery before deciding the motion.  FED. R. CIV. P. 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

To qualify for relief under FED. R. CIV. P. 56(d), the Tenth Circuit has held that the nonmoving party must submit an affidavit that meets certain requirements.  *E.g.*, *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006).

> Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.  In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.

*Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992)).  If these requirements are satisfied, however, "[t]he movant's exclusive control of [information essential to the nonmoving party's opposition] is a factor weighing heavily in favor of relief under [Rule 56(d)]."[3]  *Id.* (citation omitted).  This is because "the general principle of [Rule 56(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is

---

[3] Until recently, what is now FED. R. CIV. P. 56(d) was codified at FED. R. CIV. P. 56(f).  "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  FED. R. CIV. P. 56 2010 advisory committee's note.

essential to his opposition.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

I find that Defendants' affidavit meets Tenth Circuit requirements and sufficiently demonstrates why Defendants cannot yet present essential facts in opposition to Davis' motion. As a result, Davis' converted motion shall be held in abeyance until Defendants have conducted limited discovery into whether the Trust was an accredited investor. FED. R. CIV. P. 56(d)(1)-(2); *see also Pacific Emp'rs Ins. Co. v. Clean Harbors Envtl. Servs., Inc.*, 2009 U.S. Dist LEXIS 101565, at \*10-15 (N.D. Ill. Oct. 29, 2009) (converting a motion to summary judgment and holding it in abeyance pending limited discovery). In the affidavit, Eric Liebman, counsel for Defendants, explains that he asked counsel for Davis, Richard Cravens, IV, to produce information demonstrating that the Trust had $5,000,000 in assets when Davis represented that the Trust was an accredited investor. (Doc. 26, Ex. 2 at 1-2.) Liebman states that Cravens has not complied with these requests. (*Id.* at 2.) While Cravens has subsequently asserted in briefs that the Trust did have $5,000,000 in assets at all relevant times, (Doc. 34 at 7, 9), Defendants correctly note that unsworn arguments of counsel are not evidence. *Fritzchse v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002) (citing *Powell v. COBE Labs., Inc.*, 208 F.3d 227 (10th Cir. 2000) (unpublished)). Liebman further explains that Defendants have never been in possession of information showing whether the Trust had $5,000,000 in assets, which means that Defendants will be unable to establish a defense and rebut Davis' motion unless they are permitted to conduct limited discovery and given additional time to respond.[4] (Doc. 26, Ex. 2 at 2.). In this way, Defendants have identified facts that may

---

[4] Davis argues that "Defendants have repeatedly claimed they have the knowledge and information to proceed with affirmative defenses and counterclaims." (Doc. 45 at 7.) This statement is directly contradicted by Liebman's affidavit and numerous assertions throughout Defendants' briefs.

preclude summary judgment and the unsuccessful steps they have taken to attempt to obtain them. Defendants have also drawn this Court's attention to the fact that Davis has served Defendants with his own written discovery requests pertaining to the accreditation issue[5] (Doc. 57, Ex. A) and attempted to depose individual Defendants and defense witnesses regarding this matter.  (Doc. 41, Ex. 1 at 3 & Ex. 2.)

Davis argues that Defendants should not be entitled to discovery into whether the Trust had more than $5,000,000 in assets because, under the reasoning of the two SEC No-Action Letters he has submitted, the Trust did not need to have such assets in order to qualify as an accredited investor.  In each letter, the SEC was asked whether it would view a revocable grantor trust as an accredited investor if the grantors of the trust were themselves accredited investors.  (Doc. 34, Exs. 3-4.)   17 C.F.R. § 230.501(a)(7) provides that a trust must have "total assets in excess of $5,000,000" to be an accredited investor, but 17 C.F.R. § 230.501(a)(5) provides that "any natural person" is an accredited investor if their "individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000 . . . ."  In the No-Action Letters, the SEC stated that it would regard a revocable grantor trust as an accredited investor if each grantor was an accredited investor under 17 C.F.R. § 230.501(a)(5) by virtue of having a net worth above $1,000,000.  (Doc 34, Exs. 3-4.)  Davis argues that since he indicated in the Subscription Booklet that the Trust had more than $1,000,000 in assets, (Doc. 34, Ex. 2 at 6), the SEC would view him

---

[5] These discovery requests are in fact the subject of a Motion to Compel that is currently before me. (Docs. 60-61.)  Davis admits that this written discovery is "intended primarily to address the 'putative' defense raised for the first time in the response to Plaintiff's Motion for Judgment on the Pleadings."  (Doc. 61 at 6.)  Davis argues that since he did not know if this Court would grant his Motion for Judgment on the Pleadings, this discovery simply "proves his diligence" and should not be held against him.  (Doc. 45 at 6.) While I understand that Davis claims he was only "[taking] steps to avoid the need for any extension of the Court's case management deadlines," (*id.*), I am not inclined to permit a party to engage in unilateral discovery.

and the Trust as accredited investors and any discovery into the issue would not produce a meritorious defense.

I find this argument unavailing for several reasons.  First, as Defendants note, SEC No-Action Letters are not binding on federal courts.  *New York City Emps. Ret. Sys. v. S.E.C.*, 45 F.3d 7, 13 (2d Cir. 1995).  "SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have."  *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002).  These propositions can be seen in the No-Action Letters Davis has presented, which both state that "[b]ecause this position is based upon the representations made to the Division in your letter . . . any different facts or conditions might require a different conclusion."  (Doc. 34, Exs. 3-4.)  For these reasons, "[e]ven when district courts have ruled in accord with no-action letters, they almost always have analyzed the issues independently of the letters."  *New York City*, 45 F.3d at 13 (citations omitted).

Neither party has identified, nor have I found, controlling law providing that the Trust was an accredited investor if Davis had a net worth above $1,000,000 when he completed the Subscription Booklet.  This absence of law notwithstanding, Davis urges me to adopt the No-Action Letters as persuasive authority, find that the Trust was an accredited investor, and deny Defendants' request for discovery on the ground that it could not produce a defense that would preclude entry of judgment in Davis' favor.  (Doc. 45 at 5; Doc. 75 at 7-9.)  However, Davis overlooks the fact that even if this Court did adopt the interpretation of 17 C.F.R. § 230.501(a) presented in the No-Action Letters, it still could not conclude at this juncture that the Trust was an accredited investor when Davis represented it as such in the Subscription Booklet.  While the definition of an "accredited investor" is a question of law, as Davis notes, whether the Trust met that definition is a question of

10

fact that cannot be answered on the current record and pleadings.  In addition to presenting no evidence that the Trust had more than $5,000,000 in assets, Davis has also presented no evidence that he had more than $1,000,000 in net worth when he completed the Subscription Booklet.[6]  Even if he had, such evidence would be outside the pleadings and could not be considered without converting his motion to one for summary judgment.[7]  The open factual questions of the Davis' net worth and the Trust's assets simply cannot be resolved in the context of a motion for judgment on the pleadings.

Davis also argues that Defendants should not be entitled to discovery because Davis did not actually represent in the Subscription Booklet that the Trust had $5,000,000 in assets.  (Doc. 34 at 5-6; Doc. 45 at 8; Doc. 62 at 3).  Davis is correct that he represented only that the Trust had more than $1,000,000 in assets.  (Doc. 34, Ex. 2 at 6.)  However, Davis also indicated that the Trust was an accredited investor due to "net worth," (*id.* at 9), and this is what Defendants allege may have been a misrepresentation.  17 C.F.R. § 230.501(a)(7) provides that "[a]ny trust" is an accredited investor if it has "total assets in excess of $5,000,000" and meets certain other requirements.  This Court may ultimately conclude that the Trust was an accredited investor even if did not have more

---

[6] The only support Davis provides for this assertion is a question he answered in the Subscription Booklet, where Davis indicated that the "Subscriber's net worth" was in excess of $1,000,000.  (Doc. 34, Ex. 2 at 6.)  However, the "Subscriber" was the Trust, not Davis himself.  (*Id.* at 4.)  Even if this answer did pertain to Davis, Defendants would be entitled to uncover evidence through discovery to determine whether Davis' answer was true.

[7] The Tenth Circuit has held that "not withstanding the usual rule [in FED. R. CIV. P. 12(d)] that a court should consider no evidence beyond the pleadings" when deciding a Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgment on the pleadings, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (citation omitted).  Documents attached to the complaint are also not "outside the pleadings" for purposes of FED. R. CIV. P. 12(d).  *Alexander v. Oklahoma,* 382 F.3d 1206, 1214 n.2. (10th Cir. 2004).  Here, however, there are no documents attached to or referenced in Davis' complaint that establish the assets of the Trust or Davis' net worth.

than $5,000,000 in assets, but without binding legal authority Defendants have certainly raised a potential defense into which they are entitled discovery. *See* FED. R. CIV. P. 26(b)(1) (providing that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").

Davis further argues that Defendants should have amended their answer with their potential defense and suggests that Defendants' continuing inaction reveals the defense's "meritless basis." (Doc. 62 at 4.)   Davis also complains that Defendants had the Subscription Booklet in their possession for more than two years before this case began and "have gladly taken Plaintiff's money without ever questioning the status of Plaintiff or the trust" until after Davis filed suit.  (Doc. 34 at 8; Doc. 45 at 4.)  However, Davis points to no legal authority holding that Defendants waived their potential defense by not filing suit to rescind the Promissory Notes immediately after their execution.  Furthermore, the deadline for Defendants to seek leave to amend their pleadings had not passed when Defendants filed their response to Davis' Motion for Judgment on the Pleadings.[8]  In their response, Defendants first stated that they needed to conduct discovery into whether the Trust was an accredited investor.  At this time, Defendants explained that they would like to conduct such discovery before amending their answer because their potential defense would not "retain vitality" if Davis produced proof that the Trust had $5,000,000 in assets.  (Doc. 26 at 5-7.)  Because Davis has opposed this discovery, Defendants have not been able to obtain the information that would reveal whether they had a potential defense or counterclaim.

---

[8] Although the deadline for Defendants to seek leave to amend their pleadings was February 11, 2011, (Doc. 9 at 1), this case was stayed on February 3, 2011 and the stay was still in effect when Defendants filed their response on March 2, 2011.  (Docs. 20, 26.)

12

Because Defendants will be permitted to conduct limited discovery into whether the Trust was an accredited investor, it is necessary to set a new discovery deadline. Defendants have already advocated for this approach by filing a Motion to Set a Telephonic Conference to modify the discovery deadlines in this case. (Doc. 69.) This motion also contains proposed dates for new discovery deadlines. (*Id.* at 3.) While it would not be appropriate to adopt new deadlines without Davis' input, Defendants' motion is granted to the extent that it seeks a Telephonic Conference before me.[9] At the conference, I will set a deadline for the parties' limited discovery and also set a schedule for submission of supplemental briefs to Davis' now-converted motion for summary judgment. After discovery is complete, the parties will be permitted to submit briefs that present any new information and, if necessary, legal arguments as to whether the Trust was an accredited investor even if it did not have $5,000,000 in assets when Davis completed the Subscription Booklet.[10]

## MOTION FOR PROTECTIVE ORDER

The last issue I must consider is Davis' Motion for Protective Order. Davis asks this Court to rule that Davis may not be deposed while his Motion for Judgment on the Pleadings is pending

---

[9] In response to this motion, Davis argues that discovery deadlines should not be extended because Defendants have not been "diligent" in conducting written discovery. (Doc. 75 at 6-7.) Davis notes that he served written discovery requests pertaining to Defendants' potential defense "as soon as the stay was lifted," whereas since that time Defendants have only attempted to depose Davis and have not yet served written discovery. (*Id.* at 3, 7.) However, Davis ignores the fact that Defendants' request for discovery has been pending since March 2, 2011, when they filed their response to Davis' Motion for Judgment on the Pleadings, and that Davis has opposed such discovery throughout the many pleadings in this case. (*E.g.*, Doc. 34 at 5 ("Defendants should not be permitted to conduct discovery as any discovery on this newly alleged 'irregularity' is not justified and, as explained below, would be an utter waste of time and resources.").) I find that Defendants did not lack diligence in waiting to serve opposed written discovery requests until this Court decided whether such discovery would be permitted.

[10] This legal issue may be rendered moot depending on the outcome of Defendants' discovery. If it is not, however, the Court will have to resolve this issue in deciding Davis' motion for summary judgment.

because it would constitute "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). However, Davis has also indicated that he would not oppose his deposition "if the Court does not enter an order granting Plaintiff's Motion for Judgment on the Pleadings." (Doc. 75 at 9.) Because I have ruled that this motion will be converted to a motion for summary judgment and held in abeyance, Davis' Motion for Protective Order is moot to the extent that it seeks to prohibit his deposition altogether.

However, the parties' briefs reveal that Defendants wish to depose Davis on issues beyond the question of simply whether "the Trust, did, in fact, possess $5,000,000 in assets at the relevant time." (Doc. 26 at 5.) Specifically, Davis points to an email in which Liebman stated that Defendants intended to amend their answer to add an affirmative defense that related to a prior conviction of Davis. In 2008, Davis pled guilty to theft of government property and making a false statement to the United States Department of Housing and Urban Development. (Doc. 57, Ex. I at 3-4.) Counsel for Defendants described the proposed affirmative defense as:

> Your client's lack of accreditation can be inferred from the fact that your client chose to defraud the federal government out of approximately $300/month, and that this is probative because it is unlikely that someone with a net worth of $1,000,000 or more (excluding primary residence) or with a revocable grantor trust with in excess of $5,000,000, would commit a federal crime to obtain roughly $300/month.

(Doc. 47, Ex. 1.) In response to the Motion for Protective Order, Defendants argue that deposing Davis on this matter is not harassment but a "valid legal argument" based upon a crime that would be admissible at trial to impeach Davis' credibility. (Doc. 57 at 12.) In reply, Davis disputes that the crime would be admissible. (Doc. 62 at 5-6.)

I find that deposing Davis regarding his prior conviction exceeds the bounds of discovery requested by Defendants in their Rule 56(d) affidavit, which was information "to allow Defendants to determine whether the Trust in fact misrepresented its status as an accredited investor . . . ." (Doc.

14

26, Ex. 2 at 2.)  It is immaterial for purposes of Davis' motion whether his conviction would ultimately be admissible, because discovery into this matter would not determine whether the Trust was an accredited investor when Davis completed the Subscription Booklet.  This is the "straightforward question" Defendants have requested that Davis answer, (Doc. 57 at 4.), and the discrete issue into which I have permitted Defendants to conduct limited discovery.  To that end, it is completely unnecessary, and certainly "annoyance and embarrassment," for Defendants to question Davis on a prior conviction that is merely "probative" of whether he misrepresented that the Trust was an accredited investor.  (Doc. 57 at 12.)

Defendants have repeatedly asserted that the facts underlying their potential defense should be easy to determine.  (*E.g.*, Doc. 57 at 4-5 ("[T]he central issue is simple and objectively verifiable – did the Davis Trust have the requisite assets to be an accredited investor at the time of investment . . . .").)  For this reason, and due to the limited discovery requested in Defendants' Rule 56(d) affidavit, it is ordered that Defendants may conduct discovery only that is directly and narrowly tailored toward determining whether the Trust was an accredited investor.  Defendants may depose Davis as part of this discovery, but only on the narrow question of whether the Trust and Davis were accredited investors when Davis completed the Subscription Booklet.  FED. R. CIV. P. 26(c)(1)(D) (permitting courts to enter protective orders that "[forbid] inquiry into certain matters, or [limit] the scope of disclosure or discovery to certain matters . . . .").  Defendants may not depose Davis regarding his prior conviction or any other incidents that are disconnected from these simple factual issues.

In return, Davis may conduct narrow discovery into Defendants' assertions that St. Anselm issued promissory notes only to accredited investors and would not have issued notes to the Trust if it had known the Trust was not accredited.  However, broader discovery will not be permitted.

15

Davis has already served thirty-three interrogatories and twenty-four requests for production upon Defendants, which are the subject of a Motion to Compel that is currently pending before this Court. (Docs. 60-61.)  While this motion is not yet fully briefed, many of Davis' requests are clearly unrelated to Defendants' potential defense.  (*E.g.*, Doc. 61, Ex. 1 at 8 ("Please state whether anyone on behalf of St. Anselm has given any statement to the United States Securities and Exchange Commission regarding any of the allegations alleged in the Civil Action titled United States Securities and Exchange Commission, Plaintiff v. St. Anselm Exploration Co. . . . ."); *id.* at 20 ("Please list each and every asset of St. Anselm Exploration Company.").)  The parties are ordered to meet and confer to attempt to resolve this dispute after applying the contents of this order.  If they cannot, I will consider Davis' written discovery requests at the Telephonic Conference that will set a discovery deadline and a schedule for submission of supplemental briefs.  The parties are also ordered to confer before the Conference to see if they can agree on the type of discovery that should be allowed into Defendants' potential defense.  After hearing from the parties at the Conference, I will set limits on the number of interrogatories, requests for production, and depositions that will be permitted.

CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT:

1.  Defendants' Motion for Leave to File a Surreply (Doc. 41) is granted;

2.  Davis' Motion for Judgment on the Pleadings (Docs. 23-24) is converted to a motion for summary judgment and shall held in abeyance until Defendants have conducted limited discovery into whether the Jimmie W. Davis Revocable Trust was an accredited investor when Davis completed the Subscription Booklet;

3.  Defendants' Motion to Set a Telephonic Conference (Doc. 69) is granted; and

16

4.  Davis' Motion for a Protective Order (Doc. 47) is granted in part.  Defendants may conduct discovery only that is directly and narrowly tailored toward determining whether the Trust was an accredited investor.  Defendants may depose Davis as part of this discovery, but only on the narrow question of whether the Trust and Davis were accredited investors when Davis completed the Subscription Booklet.  In return, Davis may conduct narrow discovery into Defendants' assertions that St. Anselm issued promissory notes only to accredited investors and would not have issued notes to the Trust if it had known the Trust was not accredited.

IT IS FURTHER ORDERED that the parties shall meet and confer prior to the Telephonic Conference to see if they can resolve the discovery requests at issue in Davis' Motion to Compel (Docs. 60-61) after applying the contents of this order.  The parties shall also discuss the type of discovery that they believe should be permitted into Defendants' potential defense.  At the Telephonic Conference, I will (1) set a deadline for the parties' limited discovery; (2) set limits on the number of interrogatories, requests for production, and depositions that will be permitted; (3) set a schedule for submission of supplemental briefs to Davis' converted motion for summary judgment; and (4) consider any remaining opposed discovery requests in Davis' Motion to Compel that the parties cannot resolve without the Court's assistance.

IT IS SO ORDERED.

_William P. Lynch_

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.          17