IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE W. DAVIS,

        Plaintiff,

v.                                       CV 10-00883 JEC/WPL

ST. ANSELM EXPLORATION CO. et al.,

        Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Jimmie W. Davis ("Davis") filed a Motion to Compel Discovery (Doc. 60) on May 23, 2011, seeking an order compelling St. Anselm Exploration Company ("St. Anselm") to fully answer its interrogatories and requests for production. St. Anselm objected to the bulk of Davis' interrogatories and requests for production and filed a response to the motion on July 7, 2011. (Doc. 76.)  For the following reasons, I grant the Motion to Compel Discovery with respect to Interrogatories 13 and 20 and Requests for Production 6, 8, 9, and 20. I deny the Motion to Compel Discovery with respect to Interrogatories 12, 15, 32, and 33 and Requests for Production 2,3, 4, 5, 22, 23 and 24.

**Factual and Procedural Background**

Davis brought a breach of contract action on behalf of the Jimmie W. Davis Revocable Trust and on behalf of himself as Trustee against St. Anselm to recover on two promissory notes executed by St. Anselm. (Doc. 1.) St. Anselm admits to breaching the terms of the notes (Doc. 5 at 4), but raises a rescission defense on the grounds of misrepresentation by Davis. (Doc. 26 at 3-4.) St.

Anselm claims that Davis falsely reported that he was an "accredited investor"[1] at the time St. Anselm issued him the notes and again when the terms of the notes were restructured. (*Id.*) Since St. Anselm raised this defense for the first time in its Response in Opposition to the Motion for Judgement on the Pleadings (Doc. 26), I permitted Davis to "conduct narrow discovery into Defendant's assertions that St. Anselm issued promissory notes only to accredited investors and would not have issued notes to the Trust if it had known the Trust was not accredited." (Doc. 77 at 17.) Davis sent St. Anselm thirty-three interrogatories and twenty-four requests for production regarding St. Anselm's business practices and financial condition. (Doc. 61 Exs. A & B.) After negotiations and a judicially mediated status conference, St. Anselm submitted supplemental responses to the interrogatories and requests for production. (Doc. 80; Doc. 81; Doc. 87 Exs. A & B.) Nonetheless, the parties were unable to resolve all of the disputed discovery requests, and Davis now asks the Court to compel St. Anselm to further respond to seventeen requests. (Doc. 87.)

## Legal Standards

A party may use discovery tools, such as interrogatories and requests for production, to discover "any nonprivileged matter that is relevant to any party's claim or defense . . ." FED. R. CIV. P. 26(b)(1). Relevant information need not be admissible as evidence, but it must be reasonably calculated to lead to admissible evidence. *Id*. The court may limit the scope of discoverable information through court order. *Id*.

Responses to interrogatories and requests for production can take one of two forms: an answer or an objection. FED. R. CIV. P. 33(b); FED. R. CIV. P. 34(b)(2). Should the party answer the

---

[1] The term "accredited investor" refers to a specific category of individuals or entities designated by the Securities and Exchange Commission (SEC) to which a seller of securities may offer and sell unregistered securities. *See* 17 CFR §§ 230. 501 to 230.508. Notes are defined as securities under federal law. Securities Act of 1933 § 2(a)(1).

request, he must do so fully. *Id*. The responding party is generally required to furnish any responsive information that is available "through reasonable efforts." *Dean v. New Werner Holding Co., Inc*., No. 07-2534-JAR-GLR, 2008 WL 2560707, at *3 (D. Kan. June 26, 2008) (quoting *Schartz v. Unified Sch. Dist. No. 512*, No. 95-2491-EEO, 1996 WL 741384, at *3 (D. Kan. Dec. 18, 1996)).

If a party objects to the request, the objection must be made with specificity. *Id*. The objecting party "has the burden 'to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules.'" *Flying J Inc. v. TA Operating Corp*., No. 1:06-CV-30 TC, 2007 U.S. Dist. LEXIS 55574, at *6-7 (D. Utah July 30, 2007) (quoting *Obiajulu v. City of Rochester*, 166 F.R.D. 293, 295 (W.D.N.Y 1996)). General, conclusory allegations that a request or interrogatory is irrelevant, immaterial, unduly burdensome, or overly broad are unacceptable, and the responding party must demonstrate specifically how that request falls within the enumerated categories. *Id*.

Objections based on privilege likewise require justification. A mere assertion that a document is privileged is not enough to sustain an objection. *See* FED. R. CIV. P. 26(b)(5); *Carrel v. Davis*, No. 10-4124-RDR, 2011 U.S. Dist. LEXIS 85012, at *7 (D. Kan. Aug. 1, 2011). When asserting privilege, "the objecting party must describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery," typically in the form of a "privilege log." *Carrel*, 2011 U.S. Dist. LEXIS 85012 at *7.

### Analysis

Davis contests the answers and objections that St. Anselm provided to six interrogatories and eleven requests for production. I have categorized Davis' arguments into four different categories: 1) opposition to St. Anselm's use of "generalized" objections; 2) a demand that St. Anselm produce a privilege log; 3) claims that St. Anselm has provided an incomplete or evasive answer; and 4) a

request that the answer be stripped of its objections and become a "final answer." I will address the merits of each discovery request and response below.

   I.       *Generalized Objections by St. Anselm*

St. Anselm begins both its Second Supplemental Response to Plaintiff Jimmie W. Davis' First Set of Interrogatories (Doc. 87 Ex. A) and its Second Supplemental Response to Plaintiff Jimmie W. Davis First Set of Requests for Production (Doc. 87 Ex. B) with a "Preliminary Statement and General Objections." In this section, St. Anselm makes blanket objections to the discovery requests "to the extent they purport to place any obligation upon St. Anselm beyond what is required by the Federal Rules of Civil Procedure." (Doc. 87 Ex. A at 2; Doc. 87 Ex. B at 2.) Additionally, with the exception of Request for Production 23, St. Anselm provides a series of "boilerplate" objections for every request and interrogatory, each of which vary only slightly in form and style. (Doc. 87 Exs. A & B.) The general objections were often preceded by an attempt to particularize the objection through an additional, formulaic paragraph.[2] Plaintiff argues that this is akin to "a unilateral declaration that no objections are waived," and Davis argues that all of these generalized objections should be stricken. (Doc. 87 at 2-3.)

The Federal Rules of Civil Procedure clearly require that objections to discovery requests be particularized to that request. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."); Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part . . . ."); Fed. R. Civ. P. 36(a)(5) ("The grounds for objecting to a

---

[2] These paragraphs typically begin "Additionally/Specifically/Further, the information called for in this Request does not relate to the execution or performance of the promissory notes or corresponding subscription agreement that are at issue in these proceedings, Defendants' alleged breach of such notes, or Defendants' defenses to Plaintiffs Claims. Plaintiffs cannot establish a reasonable connection between St. Anselm's [insert topic of interrogatory here] and any matters put at issue in the pleadings. . ." (Doc. 87 Ex. A at 4,5,8,9,12.)

request must be stated."). General, blanket objections are not typically favored by courts. *Oleson v. K-mart Corp.*, 175 F.R.D. 560, 563-65 (D. Kan. 1997); *Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259, 2008 WL 4601578, at *1 (N.D. Okla. Oct. 16, 2008) (finding counsel's use of boilerplate objections "evince an uncooperativeness that is contrary to the command that the Federal Rules of Civil Procedure are to be construed to secure the 'just, speedy, and inexpensive determination of every action and proceeding.'") I do, however, recognize that a list of general objections, with specific references to those objections where relevant, is general practice in this district.

In order to invoke general objections, the responding party must specifically reference them in an individual response. Moreover, the party resisting discovery bears the burden of demonstrating that the request is objectionable or that the information sought is privileged. *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984); *Murphy v. Gorman*, No. Civ. 09-1184, 2010 WL 2977711, at *6 (D. N. M. June 9, 2010). In this case, St. Anselm invoked the general objections or used the boilerplate language in each response, save its response to Request for Production 23. The use of the formulaic paragraphs specifying why the objections applied in each case were not sufficient legal support for each objections.  However, I will not strike these objections just because they are redundant. Instead, I note these objections and they are now on the record. Additionally, to the extent that the objections are not sustained in this Order,  I overrule all of St. Anselm's general objections for a failure to explain how they specifically apply to each discovery request.

II.    *Absence of a Privilege Log*

St. Anselm has refused to respond to a number of Davis's requests on the grounds of privilege. However, at no point does St. Anselm support its objections with a privilege log. There is no excuse for failing to follow a basic, well established discovery procedure. This matter is

complicated further by the fact that St. Anselm's objections based on privilege are occasionally coupled with answers, which might indicate that the objections are waived.

In the case of interrogatories, if a responding party simultaneously objects and provides an answer, it is unclear as to whether that objection is considered waived. Prior to the 1993 amendments to the Federal Rules of Civil Procedure, courts held that any answer would waive an objection, subject to the discretion of the judge. *See Meese v. Eaton Mfg. Co.,* 35 F.R.D. 162, 166 (N.D. Ohio 1964) (holding an answer to an interrogatory waived an objection); *Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55, 58 (N.D. Ga. 1984) (holding a judge has discretion to waive an objection on the grounds of privilege when the party provides no privilege log and also provides a response). A recent case from our sister district challenges the practice of waiving objections in light of the Amendments, explaining

> Where previously the [Federal Rule of Civil Procedure 33] said that if an objection was asserted it would be in lieu of answer, the 1993 amendment provided that the responding party must answer to the extent the interrogatory is not objectionable, despite the objection. The current version of Rule is similar, and provides as follows: 'Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.' Thus, a party may assert an objection and still respond to the interrogatory.

*Schipper v. BNSF Ry.*, No. 06-2376-JWL-DJW, 2008 U.S. Dist. LEXIS 44745, at *3 (D. Kan. June 6, 2008).

*Schipper* relied heavily on the language of Rule 33(b)(3) to come to its conclusion. In *Schipper*, the court was presented with a relevancy objection, and it had sufficient information to rule on the merits of the objection. *Schipper*, 2008 U.S. Dist. LEXIS 44745 at *4-5.  In a sense, the objection was complete. However, *Schipper's* interpretation of Rule 33(b) as allowing an objection to stand when coupled with a response presents a problem in situations where the objecting party fails to provide sufficient information on which the court may rule.  Here, the objection would be

6

incomplete.  For example, when a party claims privilege, but does not provide a privilege log, it is impossible for the court to rule on the merits of a privilege objection. Practically speaking, the objection is not really an objection, it is a façade, and it cannot provide the court with the substance necessary to make a legal determination on privilege. Under this circumstance, since no real objection has been made,  it is logical to apply the old rule, in which the answer effectively waives the objection.

An analogous rule governs requests for production.  Rule 34 requires that responding parties either permit inspection "or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2). Blanket objections on the grounds of privilege are improper and constitute a waiver. *Eureka Fin. Corp. v. Hartford Acci. & Indem. Co.*, 136 F.R.D. 179, 181-184 (E.D. Cal. 1991). In *Eureka Financial Corp.,* the defendant asserted a blanket work product and attorney-client privilege objection to several requests for production without providing a privilege log, while also providing a list of documents and the court held that the defendant effectively waived the objection. *Id.*

In summary, when a party objects to a discovery request on the grounds of privilege and produces nothing, the party must produce a privilege log to substantiate the objection. When a party objects on the grounds of privilege, fails to produce a privilege  log, and proceeds to answer in part, then the answer waives the objection.  With these principals in mind, I now turn to St. Anselm's objections on the grounds of privilege.

Interrogatory 20: St. Anselm responded to this interrogatory in addition to its unspecified privilege objection.  Since St. Anselm did not produce a privilege log, I find that St. Anselm waived this objection, and I will discuss the merits of this interrogatory and St. Anselm's response below.

Requests for Production 6, 20: St. Anselm provided answers to these requests in addition to its unspecified privilege objection. These answers constitute a waiver of the privilege. I will

discuss the merits of the requests below.

Requests for Production 2, 3, 24: St. Anselm objected to these requests on broad grounds, including privilege, and did not provide any answer. These requests ask for documents regarding St. Anselm's general business practices, which I find to be overly broad and exceed the limits that I placed on discovery. Thus, I will sustain St. Anselm's overbreadth objections and I will not require St. Anselm to produce a privilege log.

Request for Production 23: This request relates to the documentation of damages caused by the misrepresentation, which is not relevant to St. Anselm's current defense for reasons discussed below.

Request for Production 9: St. Anselm raised general objections to this request in addition to its privilege objection, and it did not provide any answer nor did it produce a privilege log. I overrule St. Anselm's generalized objections and I order it to produce a privilege log for this request.

III.    Incomplete or Evasive Answer

Davis asserts that St. Anselm's answers to Interrogatories 12, 20, and 33, as well as its answer to Request for Production 8, are incomplete or evasive. I will now discuss the merits of each of these discovery requests.

Interrogatory 12: This interrogatory is seemingly innocuous, asking how St. Anselm determines whether an investor is "accredited" within the meaning of the SEC regulations. St. Anselm answers that it has "developed subscription agreements and questionnaires to ascertain the required information from investors to determine whether or not those investors would be considered 'accredited' [within the meaning of Regulation D]." (Doc. 87-1 at 7.) St. Anselm provides its own summary of Regulation D, stating that "[t]he federal securities laws define the term accredited investor in Rule 501 of Regulation D as: . . . ," and then proceeds to list eight categories

8

of accredited investors.

It is from this summary of Regulation D's definition of "accredited investor" that Davis finds fault with St. Anselm's response. The answer is not a complete summary of Regulation D's definition of "accredited investor." (*Compare* 17 C.F.R. § 230.501(a) *with* Doc. 87 Ex. A at 6-7.) St. Anselm's response to Interrogatory 12 omits subsection (8) of the SEC definition, which includes "[a]ny entity in which all of the equity owners are accredited investors." 17 C.F.R. § 230.501(a). Davis relies on this omitted category to establish that the Trust was, in fact, accredited when it purchased the notes. (Doc. 34 at 6.) Additionally, St. Anselm listed this category under part "m" of the subscription agreement Davis filled out in 2008. (Doc. 87 at 5-6; Doc. 34 Ex. B, at 7-8.) Davis argues that this is an intentional omission and asks that I sanction St. Anselm for their incomplete answer by prohibiting them from raising their accreditation defense.

I will not sanction St. Anselm, nor will I compel them to answer this interrogatory further. Although St. Anselm failed to provide a thorough definition of "accredited investor" in its answer, St. Anselm did specifically cite to Rule 501 of Regulation D as the source of its guidelines for vetting applicants. This is a sufficiently specific citation, from which the Security and Exchange Commission's definition may be easily accessed. Based on Davis' prior motions, I am confident he has already located the text of this rule. (Doc. 34 at 6.) Furthermore, Davis has a copy of a subscription agreement upon which St. Anselm relies in order to "ascertain the required information from investors to determine whether or not those investors would be considered 'accredited.'" (Doc. 34 Ex. B; Doc. 87 Ex. A at 7.) Thus, Davis has documentation that St. Anselm was aware of all possible categories of investors pertinent to accreditation at the time St. Anselm issued the notes. Further inquiry due to the inconsistent definition is unnecessary, and sanctions would be unwarranted.

Interrogatory 20: Davis asks St. Anselm to provide all material facts that support the claim that the Trust was not an accredited investor and how and when St. Anselm became aware of those facts. St. Anselm objected on the grounds of privilege, and then provided a partial answer, pointing to four facts:

> 1) Mr. Davis stated through pleadings and/or motions that there was an irregularity in the subscription agreements and that he may have thought the Trust only required $1,000,000.00 in assets to be an accredited investor; 2) despite multiple requests, Plaintiffs have provided no substantive proof regarding the truthfulness of its statements in the subscription agreements; 3) Plaintiff Davis pled guilty to fraud with respect to acquiring government monies; and 4) an online asset search conducted in 2011 revealed that the Trust had far less than $5 million in assets.

(Doc. 87 Ex. A at 11.) St. Anselm then concludes that Davis, his Trust, his accountants, and his lawyers are in possession of all of the information and will be able to support the contention.

This is not a responsive answer. First, while appending business documents is a permissible way to respond to an interrogatory under Rule 33(d), courts discourage parties from incorporating other documents, such as pleadings, by reference. *See* FED R. CIV. P. 33(d) ("Option to Produce Business Records"); *Mahoney v. Kempton*, 142 F.R.D. 32, 33 (D. Mass. 1992) (finding it improper for defendants in civil action to respond to interrogatories by referring to their testimony in prior criminal trial arising from same occurrence); *Scaife v. Boenne* 191 F.R.D. 590, 593-94 (N. D. Ind. 2000) (attaching an arrest report is nonresponsive to an interrogatory and the responding party must submit a written answer to the question).  When documents are referenced outside of the scope of Rule 33(d), the answer is not automatically considered nonresponsive, and the judge may exercise his or her discretion if the referenced material is offered as a legitimate response, and not as an attempt to obscure an answer. *See Kenney v. Shaw,* 764 F. Supp. 1501, 1503 (N. D. Ga. 1991) (permitting responding party to answer by directing party to a deposition). In the current matter, St. Anselm stated that they rely on statements made by the Plaintiff in his "pleadings and/or motions."

This response references court documents impermissibly. Unlike in *Kenny*, where the party pointed to a specific deposition, this answer appears to intended to "obscure" a real response. St. Anselm's answer is akin to a general wave in the direction of the Court Docket, without bothering to point specifically to a single document, let alone page number, which contains the facts and support Davis requested. The mere fact that St. Anselm does not even know if the statement was contained in a pleading, a motion, or both, also fails the specificity required by the rules.

Second, St. Anselm stated that it also relied on "an online asset search conducted in 2011." Ripe with passive voice, this answer fails to identify who conducted the search, what service St. Anselm used to conduct the search, when St. Anselm conducted it (2011 is hardly specific enough), and, most importantly, the results or findings of the search. Lastly, St. Anselm failed to provide the required privilege log although it raised an objection on privilege grounds. Since providing a privilege log is a basic requirement of the rules, St. Anselm waived its objection by answering the question in the absence of a log. FED. R. CIV. P. 26(b)(5). Therefore, I order St. Anselm to answer Interrogatory 20 in full and with specificity.

Interrogatory 33: In this discovery request, Davis asks for facts to support St. Anselm's "contention" that it suffered damages as a result of Davis' alleged misrepresentation. St. Anselm objected to this interrogatory on its general and specific grounds, explaining, "Defendants only need to show damages if/when they assert an affirmative fraud claim and/or securities act claim based on Plaintiff's misrepresentations." (Doc. 87 Ex. A at 15.) Davis, however, insists that "this interrogatory goes to the heart of the claim that the Defendant has an affirmative defense." (Doc. 87 at 7.)

St. Anselm does not provide the explicit legal reasoning for its objections, but it is correct to assert that this information is not relevant to a current claim or defense. St. Anselm never

11

contends in its Response in Opposition to Plaintiff's Motion For Judgment on the Pleadings (Doc. 26), nor in its Sur-Reply (Doc. 41 Ex. A), that it suffered damages as a result of Davis' misrepresentation. Rather, St. Anselm only claimed that "Defendants ruled upon the Trust's status as an accredited investor when executing the Promissory Notes, and would not have executed the Promissory Notes but for the Trust's accreditation." (Doc. 26 at 5.) At this stage, the only real contention that St. Anselm has made is that the contract is voidable, or may be rescinded, on the ground of misrepresentation. To prove a misrepresentation defense, St. Anselm must demonstrate that the misrepresentation was either fraudulent or material, it induced St. Anselm to make the contract, and St. Anselm justifiably relied on the misrepresentation. *See* RESTATEMENT (SECOND) OF CONTRACTS § 164, cmt.a (1981). Proof of damages are not necessary for this defense, making this interrogatory irrelevant to a current claim or defense. Should St. Anselm choose to assert a counterclaim for damages, which it has not yet done, it will be required to disclose, without a request, "a computation of each category of damages claimed by the disclosing party . . . [and] the documents or other evidentiary material . . . on which each computation is based . . .." FED. R. CIV. P. 26(a)(1)(A)(iii). Thus, I sustain St. Anselm's objection to this interrogatory, and I deny the motion to compel an answer to Interrogatory 33.

    Request for Production 8: This request asks for "any and all things" that support the argument that the Trust lacked the necessary assets for accreditation. St. Anselm asserts "specific and general" objections, and then states that the Plaintiffs are in possession of all documentation and they have been appended to previous pleadings. Davis, however, redirects the Court's attention to Interrogatory 20, in which St. Anselm claims that it conducted a search of the Trust's assets in 2011, which revealed a value of less than $5 million. (Doc. 87 at 9; Doc. 87 Ex. A at 11.)

    Both parties' claims are meritorious. On one hand, the interrogatory is overbroad in its

request for "any and all things" which support St. Anselm's position. On the other, St. Anselm's response is deficient because it withholds information it has already stated that it has. As previously discussed, the responding party may not answer an interrogatory by referencing another document unless the court deems it a legitimate response. *See Kenney,* 764 F. Supp. at 1503; *Mahoney*, 142 F.R.D. at 33. A similar principal applies here although this is a request for production.  St. Anselm may not allude to an answer, it must give an answer. Thus, stating that the "notes, rollover documents, investor questionnaires and subscription agreements... have been appended to various pleadings" is not a sufficient response. Additionally, St. Anselm admits in Interrogatory 20 that it relies on a 2011 asset search to support its contention that the Trust did not have sufficient assets for accreditation. This is precisely they type of "thing" that would be responsive to this inquiry.  Yet, St. Anselm failed to produce the search. Thus, I order that St. Anselm provide each specific document it relied on to make its assertion, in addition to the results of the 2011 asset search on the Trust.

Requests for Production 4, 5, 6, 20: Davis challenges the responses to Requests for Production 4, 5, 6, and 20 collectively on the grounds that St. Anselm has redacted so much information from the documents that they are virtually unidentifiable and therefore incomplete answers. St. Anselm has raised its standard objections.

With respect to Requests for Production 4 and 5, I sustain St. Anselm's objections on grounds of overbreadth. Request for Production 4 asks for "[c]opies of each and every St. Anselm Exploration Company Activity Update from 2005 to present," and Request 5 asks for "[e]ach and every 'Dear Note Holder' letter from 2005 to present." These requests ask for years of information regarding St. Anselm's business structure and activities as well as confidential communications with other investors. It is not clear how these documents are relevant to St. Anselm's potential

13

accreditation defense. While Davis' brief makes it clear that many of the documents have become unidentifiable from redactions, they do not explain why the document itself is relevant to begin with. I remind Davis that this round of discovery was narrowed from the outset, and these broad requests are not appropriate.

As to Requests for Production 6 and 20, I overrule St. Anselm's objections. St. Anselm claims, as part of its defense, that it only sells securities to accredited investors and that it verifies accreditation through subscription agreements. (*See* Doc. 87 Ex. A at 6-7; Doc. 26.) Davis is entitled to investigate that claim, and a review of past purchase questionnaires (Request for Production 6) and any past asset searches on other investors (Request for Production 20) are targeted requests which are directly relevant to this defense. Request 6 limits the response to documents from 2005 to present, but Request 20 does not impose a time limit. Since the notes at issue were sold in 2008, the request for documents from 2005 is not unreasonable, since Davis is entitled to see if there was a pattern of behavior prior to obtaining his notes. Thus, I order that St. Anselm respond, in full, to Requests for Production 6 and 20, and that it provide appropriate labeling to identify the responsive documents. Further, I remind St. Anselm that a privilege log is necessary should they raise further objections on the grounds of privilege.

IV.    *Request for the Imposition of a Final Answer*

Davis makes a unique request in his Motion to Compel, which amounts to asking the Court to hold St. Anselm to the answers provided in response to Interrogatories 13, 15, and 32 and Request for Production 22. Specifically, in Interrogatory 13, Davis asks that the St. Anselm's response be "the only answer allowed from this day forward in pleadings, papers, hearings and trial." (Doc. 87 at 6.) In Interrogatories 15 and 32, Davis requests that "this be the final answer devoid of later editing or supplementation based on objections." (*Id*. at 6-7.) Finally, with respect to St. Anselm's

14

answer to Request for Production 22, Davis aks the court for "any objections raised be stricken and that the answer given be that which the Defendants must live with for the duration of this litigation." (*Id*. at 10.)

A party is required to supplement or correct responses provided to the opposition party's interrogatories or requests for production. FED. R. CIV. P. 26(e)(1)(A). The purpose of this rule is "to prevent 'trial by ambush.'" *See Gipson v. Sw. Bell Tel. Co.*, No. 08-2017-EFM-DJW, 2009 U.S. Dist. LEXIS 111947, at *8 (D. Kan. 2009) (quoting *Kunstler v. City of New York,* 242 F.R.D. 261, 264 (S. D. N. Y. 2007). Thus, a blanket prohibition against any and all future amendments or corrections would be contrary to the requirement that a party supplement answers upon learning new information. I cannot prohibit St. Anselm from doing what it must.

However, a party must seek leave of the court to withdraw or amend answers, and a judge may exercise his or her discretion in deciding whether to allow it. *See* FED R. CIV. P. 33(b); *Bollard v. Volkswagen of Am., Inc*., 56 F.R.D. 569, 574-75 (W. D. Mo. 1971) (holding defendant's deliberate filing of different set of answers than those it served on propounding party constituted unauthorized amendment of answers). Additionally, the non-amending party may use the original answers as an evidentiary admission. *See* FED. R. EVID. 801(d)(2) (admission by party opponent); *id.* In *Bollard*, Volkswagen disavowed sixteen interrogatories and later provided a partial answer. The court found that by originally disavowing any knowledge or information, and then subsequently providing information, the "original disavowals and claims of unavailability of knowledge were false answers made with knowledge of their falsity." *Bollard*, 56 F.R.D. at 575. At this point, I cannot prohibit St. Anselm from amending answers in the future. However, I remind the parties that I may review

future amendments for foul play.[3]

With this in mind, I turn to the remaining discovery requests: Interrogatories 13, 15, and 32; and Request for Production 22.

<u>Interrogatory 13</u>: Davis asks whether St. Anselm has ever refused to permit an investor from investing based on answers and responses to the purchaser questionnaire or subscription agreement. (Doc. 87 Ex. A at 7.) St. Anselm raises a host of general objections, including vagueness, overbreadth, and relevance, and then concludes by answering "no."

I find the objections to be entirely meritless. This question is not overbroad or irrelevant since it goes directly to the validity of St. Anselm's defense. Additionally, the question is quite clear as to what it asking, although St. Anselm argued that "refuse to permit" is vague.(*Id*.)  St. Anselm looked at the subscription agreement and either approved or refused the investor. It seems clear.

In turning to the substance of St. Anselm's answer, I am concerned that its response is "no." Essentially, St. Anselm is stating that it has never refused to allow an investor from investing based upon answers and responses to the purchase questionnaire and subscription agreement.  This is hard to reconcile with information contained in other documents submitted to the Court.  How can St. Anselm state that:

1.    The company only relies on information gathered in subscription agreements to determine whether or not an investor is accredited, and therefore disqualified (Doc. 87 Ex. A at 7);

2.    It has <u>never</u> rejected an investor based on information provided in a subscription agreement, implying that only accredited investors have ever tried to invest with St. Anselm (Doc. 87

---

[3] St. Anselm insists that it did not maintain paper records of investors that it disqualified, and that it would be "impossible for St. Anselm to provide specific information with respect to investors that St. Anselm disqualified." (Doc. 76 at 13.)

Ex. A at 8); and

3.      Indicate that it has disqualified investors in the past (Doc. 76 at 13 ("St. Anselm did not

maintain paper records of investors that it disqualified . . . . Accordingly, it would be

impossible for St. Anselm to provide specific information with respect to investors that St.

Anselm disqualified.")

The logical implications of statement one and two are that St. Anselm has never disqualified

a potential investor, which makes it difficult to understand St. Anselm's reference to disqualified

potential investors in its Response to Plaintiff's Motion to Compel Discovery Responses. Given this

peculiarity in St. Anselm's logic, I order it to answer Interrogatory 13 fully and completely.

Interrogatory 15: This request asks: "Has St. Anselm Exploration Company ever accepted

investment money from a non-accredited investor . . . ?" (Doc. 87 Ex. A at 8.) St. Anselm raised its

standard objections before answering that subsequent to April 2006, it never "knowingly accepted

investment money from a non-accredited investor." (*Id.* at 9.) St. Anselm could not speak to whether

it had accepted money prior to April 2006.

I would have sustained St. Anselm's overbreadth and relevance objection. There are a

number of investments which are not securities and for which the SEC has no registration

requirement.  Thus, whether or not an investor is accredited would be immaterial for these types of

financial instruments. Furthermore, these types of financial instruments are irrelevant to the matters

at issue in this case. However, since St. Anselm did provide a response to the question, it will stand,

and I will not order them to answer further.

Interrogatory 32: St. Anselm claims that it "relied to its detriment" on Davis'

misrepresentations, and this interrogatory asks for the material and principal facts which support this

argument and "any and all documents; persons . . . and any other support for Defendant's

contentions." (Doc. 87 Ex. A at 13.) St. Anselm provides its general objections to the question and argues that it cannot provide the facts to support this contention because "Plaintiffs refuse to provide the discovery St. Anselm needs to respond." (Doc. 87 Ex. A at 13.) St. Anselm continues to assert that it relied on Davis' statements made in the two subscription agreements in 2008, as well as statements made in connection with the roll over agreements in 2009.

Unlike the matter of damages, detrimental reliance is a key element to a misrepresentation defense. *See* RESTATEMENT (SECOND) CONTRACTS § 164 (1981). Davis' inquiry into the facts on which St. Anselm relied is indeed relevant. The first portion of the interrogatory requests only the "material and principal facts," which is not overbroad or unduly burdensome. While the second portion of the requests uses the "any and all" language, since it is already within the parameters of "material and principal facts," I find that this is also not overbroad or unduly burdensome. Thus, I overrule the objections, and I find that the answer stands as it has been answered.

Request for Production 22: This request asks for "any and all documents, correspondence, memorandums [sic], emails, and other tangible things that support Defendant's content that it relied to its detriment . . .." Like Interrogatory 32, I find that this request is relevant as it relates to a key element in a misrepresentation defense, and I overrule St. Anselm's objections.  However, Davis does not request further documents than those already produced; rather, Davis asks that I order St. Anselm to "live with" its answer.  For the reasons discussed above this is not something I may grant. Thus, I do not compel St. Anselm to answer the request further, and the answer to the requests will suffice as it stands.

Davis' Motion to Compel Discovery is GRANTED IN PART and DENIED IN PART, as set forth above. Costs and fees are not awarded to either party.

IT IS SO ORDERED.


_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.       19