IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE W. DAVIS, individually and
As TRUSTEE of the JIMMIE W. DAVIS
REVOCABLE TRUST,

      Plaintiff,

v.                                                            CV 10-00883 JEC/WPL

ST. ANSELM EXPLORATION CO. et al.,

      Defendants.

## ORDER GRANTING IN PART AND
## DENYING IN PART MOTION TO COMPEL

This matter is before me on a Motion to Compel Discovery Responses by Defendants St. Anselm Exploration Co., Anna M.R. Wells, and Mark S. Palmer. (Doc. 96.) They seek supplemental discovery responses from Plaintiff Jimmie W. Davis regarding his net worth and the net worth of the Jimmie W. Davis Revocable Trust as of 2008 and 2009. Davis opposes this motion, arguing that he has fully responded to Defendants' requests for production. (Doc. 108.) After having carefully considered the law and relevant facts, I grant in part and deny in part Defendants' motion to compel.

### FACTUAL & PROCEDURAL BACKGROUND

Davis brought a breach of contract action on behalf of the Jimmie W. Davis Revocable Trust and on behalf of himself as Trustee against St. Anselm to recover on promissory notes executed by St. Anselm in 2009. (Doc. 1; Doc. 16.) St. Anselm admits to breaching the terms of the notes (Doc. 5 at 4) but argues that the Court should rescind the contract due to Davis' alleged misrepresentation (Doc. 26 at 3-4). St. Anselm claims that Davis falsely reported that he was an

accredited investor[1] in October 2008, when he executed a Subscription Agreement, and again in October 2009, when the prior notes were "rolled over" into new notes. (*Id.*; Doc. 18 at 6.) I permitted Davis to "conduct narrow discovery into Defendants' assertions that St. Anselm issued promissory notes only to accredited investors and would not have issued notes to the Trust if it had known the Trust was not accredited." (Doc. 77 at 17.)

On July 27, 2011, Defendants served their first set of discovery requests on Davis. (Doc. 96 at 4; Doc. 96 Ex. A.) In it, they made five requests for production:

1. Produce all documents that show, alone or in conjunction with other documents, the Trust's net worth as of each of the dates of execution of the Subscription Agreements and the Rollovers.

2. Produce all documents that show Davis's net worth as of each of the dates of the execution of the Subscription Agreements and the Rollovers.

3. Produce all documents evidencing the value (including appraisals) of any property you are asserting contributes to the net worth of either Plaintiff for purposes of accredited investor status as defined in the Subscription Agreements.

4. Produce all documents evidencing your representations and warranties in the Subscription Agreements that the Subscriber was an accredited investor and, in addition, had sufficient experience in financial matters and prior investments to evaluate the potential benefits, and the risks, of investing in the company.

5. To the extent any of your responses to the Requests for Admission below are anything but an unqualified admission, produce all documents evidencing the factual and/or legal basis for the denial or partial denial.

(Doc. 96 Ex. A at 9-10.) Davis' response to the discovery requests comprised of seventy-seven pages of documents, including a Statement of Financial Condition as of 2008 ("2008 Statement")

---

[1] The term "accredited investor" refers to a specific category of individuals or entities designated by the Securities and Exchange Commission (SEC) to which a seller of securities may offer and sell unregistered securities. *See* 17 CFR §§ 230. 501 - 230.508. Notes are defined as securities under federal law. Securities Act of 1933 § 2(a)(1), 15 U.S.C. § 77b(a)(1) (2012).

that calculated his net worth to be $5,787,665. (Doc. 96 at 4; Doc. 96 Ex. B.[2]) Three days later, during a deposition, Davis' attorney agreed to supplement the responses if he came across more relevant documents. (Doc. 95 Ex. D at 7.) After the deposition, Defendants sent Davis' counsel a general list of requested documentation (Doc. 96 Ex. E) and a supplemental list several days later (Doc. 96 Ex. F). Davis later supplemented his discovery responses with an additional promissory note and ledger pages. (Doc. 96 Ex. G.)

Defendants now seek discovery from Davis regarding his and the Trust's finances and assets in 2008 and 2009. (Doc. 96 at 2; Doc. 113 at 1.) Unsatisfied with the documents produced by Davis, Defendants moved for the Court to compel Davis to "respond fully" to their requests for production. (Doc. 96 at 2.) Davis insists that he has produced all documents necessary for determining that he was accredited at the time he purchased St. Anselm notes. (Doc. 108 at 1, 3.) He additionally argues that he has complied with the discovery requests in good faith, but that due to his age and the lack of an electronic filing system, he has been unable to uncover additional documentation. (Doc. 108 at 2-3.) Defendants replied with a list of six categories of documents that they would like produced pursuant to a court order. (Doc. 113 at 4-5.)

Prior to Defendants filing this motion to compel, Davis filed a motion for summary judgment. (Doc. 23; Doc. 92.) Initially, the Court wished to resolve the summary judgment matter prior to the discovery matter. However, since this order will provide discovery relevant to Defendants' affirmative defense, I will rule on it prior to the Court's decision regarding summary judgment.

---

[2] Defendants filed Exhibits B, C, D, F, G, and H under seal in a separate document. (Doc. 99.) These exhibits are filed as Docs. 99-15, 99-16, 99-17, 99-18, 99-19, and 99-20 respectively in the docket. Exhibits A and E were filed as attachments to Document 96. I will cite to all of the Exhibits as exhibits to Document 96 (e.g. Doc. 96 Ex. A, Doc. 96 Ex. B, et al.). However, they can be located electronically as exhibits to Document 99 in the CM/ECF docket.

## LEGAL STANDARDS[3]

A party may use requests for production to seek items in the "possession, custody, or control" of a party. FED. R. CIV. P. 34(a)(1). If a party "has the legal right to obtain documents on demand," then those documents are considered within the party's control for the purposes of Rule 34. *Hamstein Cumberland Music Grp. v. Estate of Williams*, Case No. 06-CV-63-GKF-PJC, 2008 U.S. Dist. LEXIS 49589, at *9 (N.D. Okla. June 30, 2008) (quoting *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992)); *see also Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 635 (D. Kan. 1999).) As a matter of logic, a party is under no obligation to produce a document that it neither possess nor has a legal right to obtain.

In responding to a discovery request, a party may answer or object. FED. R. CIV. P. 34(b)(2). Should the party answer the request, he must do so fully. *Id*. The responding party is required to furnish any responsive information that is available "through reasonable efforts." *Dean v. New Werner Holding Co., Inc*., No. 07-2534-JAR-GLR, 2008 U.S. Dist. LEXIS 49519, at *8-9 (D. Kan. June 26, 2008) (quotation omitted). It also has an ongoing duty to supplement its answers as information becomes available. FED. R. CIV. P. 26(e)(1)(A).

Federal Rule of Civil Procedure 37 permits a party to file a motion to compel to enforce a request for production if the responding party fails to respond as requested. FED. R. CIV. P. 37(a)(3)(B). The requesting party has the burden of proving that the producing party has the control required to obtain the requested document. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, Case No. 05-2164-MLB-DWB, 2007 U.S. Dist. LEXIS 22090, at *62 (D. Kan. Mar. 26, 2007).

---

[3] Under the principles of the *Erie* Doctrine, I will use federal law to resolve this discovery dispute*. See Hanna v. Plumer*, 380 U.S. 460, 463-64 (1965). For the sake of clarity, I remind the parties that Colorado law controls the substantive law issues in this case. (*See* Doc. 100 at 4 n.2.)

**DISCUSSION**

Davis' only response to the motion to compel is that he has already tried to produce all requested documents, in good faith, and that to ask him to do more would be unreasonable. (Doc. 108 at 2-8.) I disagree. However, Defendants' suggested discovery, as outlined in the form of a six part list in their reply brief (Doc. 113 at 4-5), is overly broad and burdensome. Using Defendants' list as a template, I order Davis to produce the following documents to Defendants.

  *1. Checking, Savings, and Investment Accounts*

Defendants begin their list of desired discovery with a request for account records from financial institutions holding or managing Davis' or the Trust's money and assets. (Doc. 113 at 4.) According to his 2008 Statement, Davis had $4,249 in a checking account, $121,487 in savings, and $1,108,734 in investments. (Doc. 96 Ex. B at 2.) However, Davis has only provided bank statements from December 2008 and January 2009 for his checking and savings accounts and no documentation for two of his four investments, labeled "VSI" and "PFG Best." (Doc. 96 Ex. H at 2.)[4]

While Davis may not have access to a complete catalogue of his banking records at his home, this does not exempt him from producing the records all together, since he may request such documents from his financial institutions. Such requests are not unduly burdensome. While Davis argues that additional records are not relevant to show the value of the trust (Doc. 108 at 1), this objection is meritless. Any proper accounting of his assets during this period is clearly relevant to his status as an accredited or non-accredited investor. Therefore, I order that Davis request copies of account statements for his checking and savings accounts from September

---

[4] "Exhibit H" is a chart provided by Defendants that contains each item Davis claimed to own, the value of the item, the type of supporting documentation produced regarding the item, and the types of documents that Defendants would like produced. (Doc. 96 Ex. H.) Davis did not object to the information in the chart, and so I will reference the chart as an accurate reflection of the types of documents Davis has provided to Defendant.

2008, October 2008, September 2009, and October 2009. Further, he must produce quarterly and annual statements for his VIS and PFG Best investments from 2008 and 2009. Davis must make a request for account statements to the appropriate financial institution(s) no later than fourteen days from the entry of this order. All records must be provided to the Defendants within forty-five days of the entry of this order.

    *2. Promissory Notes*

Included in Davis' 2008 Financial Statement is a list labeled "Accounts Receivable," which contains thirty-four entries for promissory notes with individuals or companies. (Doc. 96 Ex. B at 2, 4-6.) These entries amount to $906,175 owed to Davis. (*Id.*) Defendants would like copies of all promissory notes and any available payment ledgers tracking payments from the payees of the notes. (Doc. 113 at 4.) Davis has produced a copy of a ledger, which Defendants claim is "incomprehensible" (Doc. 96 at 5), and copies of eleven of the thirty-four promissory notes. (Doc. 96 Ex. H at 2-4.) Davis does not provide a specific reason as to why he has not produced copies of all of his promissory notes, aside from his general assertion that most of his records are not organized and are in paper form. (Doc. 108 at 2.) While poor organization is a lackluster excuse, I cannot order Davis to produce documents not in his possession. However, given his excuse, I doubt that he has truly used reasonable efforts to locate all of the necessary records. Davis must sift through all of his records and produce copies of any of the promissory notes in his possession. I remind Davis that if he should miraculously locate documents prior to trial, and supplement his responses in the eleventh hour, a judge has discretion to exclude such evidence from trial. *See* FED R. CIV. P. 33(b); *Bollard v. Volkswagen of Am., Inc*., 56 F.R.D. 569, 574-75 (W. D. Mo. 1971). Davis must serve on Defendants copies of the promissory notes within thirty days of the filing of this order.

### 3. Judgments & Court Documents

Davis noted under six of his "accounts receivable" that he had judgments or liens against a number of payees on the notes. (Doc. 96 Ex. H at 4.) Defendants request a copy of all pleadings, orders, and judgments filed in the "subject cases." (Doc. 113 at 4.) However, court documents are publicly available, and Defendants have not indicated that any of the documents in the subject cases are not accessible by the public. When party does not have in its possession, control, or custody a requested record, it does not have to obtain a copy of that record if it is equally accessible to the requesting party. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 138 (2d Cir. 2007). Since there is no indication that Defendants cannot access these documents, I will not order Davis to obtain copies. However, Davis must produce a list of all case numbers or names of the parties, with the corresponding court, as well as copies of all court orders, judgments, and pleadings in these cases in his possession no later than thirty days from the entry of this order.

### 4. Vehicles, Boats, Motorcycles, Trailers & Mobile Homes

Davis reported that he owned a number of cars, trucks, trailers, motorcycles, boats, and mobile homes in 2008. (Doc. 96 Ex. B at 7-11.) Yet, Davis has only provided title documents for about half of the vehicles and vessels. (Doc. 96 Ex. H at 5-6, 9-11.) Defendants request a certificate of title or sale for all vehicles and vessels, as well as a description of their overall condition at time of sale to "serve as guidance of the value of the vehicles." (Doc. 113 at 4-5.) While it is acceptable to ask for proof of title or sale, the request for information regarding the cars at the time of sale appears to be a backhanded way to increase the number of interrogatories. Therefore, I only order that Davis produce certificates of title or proofs of sale from the New

Mexico Motor Vehicles Division on all of his vehicles and vessels.[5] He must make this request for documents from the Motor Vehicles Division within fourteen days of entry of this order. He must serve copies of these documents on Defendants within forty five days from the entry of this order.

   5. *Real Estate*

Davis also claims to own real estate valued at more than $3 million. (Doc. 96 Ex. B.) Defendants request documents evincing the ownership, sale, or purchase of the real estate. (Doc. 113 at 5.) However, documents of title are publicly available at a county recording office. Furthermore, it would be far beyond the scope of a request for production to order Davis to hire experts to appraise all of his properties and produce these appraisals. I deny Defendants' request on this matter.

   6. *Personal Property*

Davis claims to own various items of personal property valued at over $200,000. (Doc. 96 Ex. H at 11-12.) This list includes wildlife trophies, household contents, a stamp collection, a coin collection, gold and silver bars, art, a gun collection, and jewelry. (*Id*.) Aside from a handful of purchase receipts and a photograph, Davis has not provided any documentation to support his ownership or valuation of these items. (*Id*.)

Defendants request that Davis produce an itemized list of all of his personal property and any documents regarding their purchase, sale, or value. (Doc. 96 Ex. H; Doc. 113 at 5.) They suggest that Davis simply request all documentation from sellers or dealers. Requiring Davis to

---

[5] This is based on the assumption that copies of a certificate of title are not available to the public. If Davis can demonstrate to the court within fourteen days of the entry of this order that such documents are publicly available, then he only need to produce the licenses plate number and VIN number for each vehicle such that Defendants may locate the appropriate documents.

itemize and describe his personal property is, again, the subject of an interrogatory, not a request for production. As for producing proof of ownership or proof of the value for all items, this is markedly different than asking Davis to produce account statements from a bank. Requiring him to document the value of all of his possessions would be unduly burdensome.

### COSTS AND FEES

Federal Rule of Civil Procedure 37(a) provides for costs and fees to be awarded to the prevailing party when a motion to compel is granted and to the opposing party when a motion to compel is denied. When a motion is granted in part and denied in part, the court may apportion the reasonable expenses for the motion. FED. R. CIV. P. 37(a)(5)(C). I will not award fees for either party at this time.

### CONCLUSION

Defendants' motion to compel is granted in part and denied in part, as set forth above. Costs and fees are not awarded to either party. Since discovery produced by Davis may be relevant to summary judgment, the parties are permitted to file supplemental briefing on Davis' motion for summary judgment. (Doc. 23; Doc. 92.) Davis may file a supplemental brief no later than **August 17, 2012**. Defendants may file a supplemental response no later than **August 31, 2012**. Davis may file a supplemental reply no later than **September 14, 2012**.

IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

9