UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMIE W. DAVIS, individually,
and as TRUSTEE of the JIMMIE W. DAVIS
REVOCABLE TRUST,

    Plaintiff,

v.                                      No. 10-CV-883 KG/WPL

ST. ANSELM EXPLORATION CO.,
a Colorado corporation, ANNA M.R.
WELLS, and MARK PALMER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On April 29, 2013, Plaintiff, individually and as Trustee of the Jimmie W. Davis Revocable Trust, filed a Motion for Reconsideration (Doc. 165), wherein he requests that the Court reverse its ruling in a Memorandum Opinion and Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion to Amend (MOO). (Doc. 161). On May 20, 2013, Defendants responded, and on June 6, 2013, Plaintiff filed a reply. (Docs.168 and 171). Having reviewed the briefs and relevant law, the Court denies the Motion for Reconsideration.

*A. Background*

The Court will present the background information for Plaintiff's Motion for Reconsideration by providing summaries of the following: (1) material facts; (2) Plaintiff's lawsuit and Defendants' answer; (3) relevant statutory and regulatory laws; (4) Plaintiff's Motion for Judgment on the Pleadings; (5) Defendants' Motion to Amend; (6) the MOO; and (7) Plaintiff's Motion for Reconsideration.

*1. Summary of material facts*

Plaintiff is the trustee of the Jimmie W. Davis Revocable Trust (Trust), a revocable grantor trust. *See* (Doc. 16) at 1. Defendant St. Anselm Exploration Company (St. Anselm) is a Colorado based company that, in part, sells securities to investors. *Id.* On September 30, 2008, and October 1, 2008, Plaintiff signed a Purchaser Questionnaire and Subscription Agreement (collectively, the Subscription Booklets) which "relate[d] to the offer by [St. Anselm] to sell securities to [the Trust] of one or more Promissory Notes." (Doc. 34-2) at 4. In the Subscription Booklets, Plaintiff marked that he was purchasing securities for the Trust and represented to St. Anselm that the Trust had more than $1 million in assets and qualified as an "accredited investor" under 17 C.F.R. § 230.501. *See* (Doc. 34-2) at 6, 9, 13. On October 1, 2008, and October 3, 2008, St. Anselm executed two promissory notes to Plaintiff.

On October 1, 2009, and October 3, 2009, St. Anselm executed two additional promissory notes (Promissory Notes) promising to pay Plaintiff, individually or as the trustee of the Trust, twenty percent interest each on principal amounts of $120,000 and $130,000, respectively. *See* (Doc. 16) at ¶¶ 13, 17; (Docs. 16-1, 16-5). St. Anselm offered to Plaintiff an interest bonus of five percent if Plaintiff, as the trustee, agreed to roll over the funds from the two previous promissory notes dated October 1, 2008, and October 3, 2008, into the October 1, 2009, and October 3, 2009, Promissory Notes. (Doc. 16) at ¶¶ 14, 18. Plaintiff agreed to roll over the funds. (Doc. 16) at ¶¶ 15, 19; (Doc. 16-3). Defendants Anna Wells (Wells) and Mark Palmer (Palmer) personally guaranteed payment of the Promissory Notes, along with interest and the reasonable costs of collection. Doc. 16 at ¶¶ 16, 20; (Doc. 16-4). Wells and Palmer's liability was joint and several. *Id.* St. Anselm failed to make payments on the Promissory Notes in August and September, 2010. (Doc. 16) at 4.

*2. The lawsuit*

On January 3, 2011, Plaintiff filed this breach of contract action, individually and as trustee of the Trust, to recover on the Promissory Notes executed by St. Anselm and personally guaranteed by Wells and Palmer. *See* (Doc. 16). St. Anselm, Wells, and Palmer (collectively, Defendants) admitted that St. Anselm breached the terms of both Promissory Notes, and that each Defendant is jointly and severally liable for the principal, interest, and cost of collection on both Promissory Notes. *See* (Doc. 16) at 4; (Doc. 18) at 5-6.

Defendants counter that the Court should rescind the Promissory Notes because Plaintiff misrepresentated in the Subscription Booklets that the Trust was an accredited investor in October 2008, when Plaintiff executed the Subscription Agreement, and again in October 2009, when the prior promissory notes were rolled over into new Promissory Notes. (Doc. 26) at 3-4; (Doc. 18) at 6. Therefore, this lawsuit hinges on whether Plaintiff misrepresented to St. Anselm in October 2008 and 2009 that the Trust was an accredited investor under 17 C.F.R. § 230.501.

*3. Statutory and regulatory laws*

The Securities Act of 1933 (Act) regulates public offerings of securities, prohibiting offers and sales of securities which are not registered with the Securities and Exchange Commission (the "SEC") unless exempted from registration in accordance with the Act. *See* (Doc. 161) at 4. Under SEC Regulation D, 17 C.F.R. §§ 230.501-230.508, the term "accredited investor" refers to a specific category of individuals or entities that may purchase unregistered securities. Section 230.501(a) defines the term "accredited investor" to include the following categories of investors:

> (5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;
> …
> (7) Any trust, with total assets in excess of $5,000,000, not formed for

3

    the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii); and

    (8) Any entity in which all of the equity owners are accredited investors.

To assist the Court's interpretation of accredited investor, Plaintiff provided the Court with two SEC No-Action letters interpreting "accredited investors" under Section 230.501(a).[1] (Docs. 34-3, 34-4). The SEC stated in the No-Action Letters that it would regard a revocable grantor trust, such as the Trust, as an accredited investor if each grantor was an accredited investor under Section 230.501(a)(5) by virtue of having a net worth above $1 million. *Id.* The Court notes that SEC No-Action Letters are not binding on federal courts. *New York City Emps. Ret. Sys. v. S.E.C.*, 45 F.3d 7, 13 (2d Cir. 1995). "SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have." *Gryl ex rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002).

    *4. Plaintiff's Motion for Judgment on the Pleadings (Doc. 23)*

On February 16, 2011, Plaintiff filed a Motion for Judgment on the Pleadings. On July 8, 2011, United States Magistrate Judge William Lynch converted Plaintiff's Motion for Judgment

---

[1] The SEC website describes no-action letters as follows:

    An individual or entity who is not certain whether a particular product, service, or action would constitute a violation of the federal securities law may request a "no-action" letter from the SEC staff. Most no-action letters describe the request, analyze the particular facts and circumstances involved, discuss applicable laws and rules, and, if the staff grants the request for no action, concludes that the SEC staff would not recommend that the Commission take enforcement action against the requester based on the facts and representations described in the individual's or entity's request.

*No-Action Letters*, U.S. Securities and Exchange Commission, http://www.sec.gov/answers/noaction.htm

on the Pleadings into a motion for summary judgment and held it in abeyance to allow the parties limited discovery.[2] On September 13, 2011, after the parties completed limited discovery, Plaintiff filed his Supplemental Brief in Support of Motion for Summary Judgment. (Doc. 92). Subsequently, on August 13, 2012, Plaintiff filed his Second Supplemental Brief in Support of Motion for Summary Judgment (Second Supplemental Brief). (Doc. 134).[3]

Plaintiff argued in his Second Supplemental Brief that his personal net worth was greater than $1 million in October 2008 and 2009. Relying on the SEC No-Action Letters, Plaintiff, therefore, contended that the Trust was an accredited investor because he, as the sole grantor of the Trust, was an accredited investor, *i.e.*, he had a net worth in excess of $1 million. Consequently, Plaintiff concluded that he did not misrepresent that the Trust was an accredited investor to Defendants.

Plaintiff provided the Court with two documents he authored to demonstrate his net worth was greater than $1 million: "Statement of Net Worth 2008," and "Statement of Net Worth 2009" (collectively, Statements of Net Worth). (Docs. 134-2 and 134-3). Both Statements of Net Worth contained tables of property Plaintiff alleged to own and their corresponding value, broken into the following categories: savings; checking; real estate[4]; accounts receivable;

---

[2] Judge Lynch allowed Defendants limited discovery regarding "whether the Trust met the definition of an 'accredited investor' when [Plainitff] completed the Subscription Booklet," and allowed Plaintiff to "conduct narrow discovery into the Defendants' assertions that St. Anselm issued promissory notes only to accredited investors and would not have issued notes to the Trust if it had known that the Trust was not accredited." (Doc. 77) at 8, 13, 16-17.

[3] Defendants filed a response to Plaintiff's Second Supplemental Brief, and Plaintiff filed a reply. (Docs. 144, 149).

[4] In his "Statement of Net Worth 2008" under the heading "Real Estate 2008," Plaintiff listed fifteen real properties with their purported value, totaling $3,171,400.00. (Doc. 134-2) at 2. In his "Statement of Net Worth 2009" under the heading "Real Estate 2009," Plaintiff listed fifteen real properties with their purported value, totaling $3,171,400.00. (Doc. 134-3) at 2.

vehicles, boats, motorcycles, trailers, and mobile homes; and personal property. *Id.* Plaintiff also listed his total liabilities. *Id.* Additionally, Plaintiff submitted certain underlying documentation in support of his net worth summaries.[5] Plaintiff totaled the values of the property listed in each "Statement of Net Worth," subtracted his total liabilities, and listed his total net worth in 2008 as $5,095,954.91, and in 2009 as $5,319,693.08. (Doc. 134-2). Plaintiff also attached a personal affidavit stating, "I had in excess of $5,000,000 in assets in 2008 when I filled out the Subscription Agreements and Purchaser Questionnaires and in 2009 when the funds were rolled over." (Doc. 134-1) at 2.

Defendants objected to the admissibility of Plaintiff's Statements of Net Worth and supporting documentation, arguing that Plaintiff's affidavit regarding his net worth during the relevant time was both self-serving and premised on inadmissible summaries and, therefore, both Statements of Net Worth are inadmissible. *See* (Doc. 98 at 8-14; Doc. 112 at 3). Thus, Defendants contended that Plaintiff's reliance on the Statements of Net Worth to establish his net worth was misplaced, and, without the "Statement[s] of Net Worth," genuine issues of material fact existed as to whether the Trust was an accredited investor.

5. *Defendants' Motion to Amend Defendants' Motion for Leave to File Answer (Motion to Amend) (Doc. 97)*

On September 29, 2011, Defendants filed a Motion to Amend.[6] Defendants sought leave to file an amended answer to include additional defenses related to Plaintiff's potential

---

[5] *See* (Doc. 135) (statements of Plaintiff's investments and checking and savings accounts); (Doc. 136) (copies of promissory notes made out to Plaintiff); (Doc. 137) (copies of judgments in Plaintiff's favor); (Docs. 138, 139) (titles to Plaintiff's boats, motorcycles, trailers, and mobile homes).

[6] Plaintiff filed a response and Defendants filed a reply. (Docs. 107 and 112).

misrepresentation that the Trust was an accredited investor. Defendants also sought to add counterclaims for fraudulent and negligent breach of warranty and misrepresentation.

Plaintiff objected to the Motion to Amend because it was filed for an improper purpose and would be futile. (Doc. 107). Plaintiff asserted that it is undisputed that the Trust was an accredited investor by virtue of his net worth, in excess of $1 million in October 2008 and 2009, thereby negating Defendants' allegations of misrepresentation.

   *6. The MOO*

On March 28, 2013, the Court denied Plaintiff's request for summary judgment.[7] (Doc. 161) at 8. The Court noted that, although it was undisputed that Defendants breached the terms of the Promissory Notes, Plaintiff still needed to show that there was no factual dispute regarding whether the Trust was an accredited investor in order to be granted summary judgment on a potential rescission claim. *Id.* The Court found the SEC No-Act Letters to be persuasive, and, therefore, the Court would have granted Plaintiff summary judgment if Plaintiff could prove that he was an accredited investor, *i.e.*, had a net worth in excess of $1 million. *Id.* at 11. However, the Court found Plaintiff's Statements of Net Worth to be inadmissible. *Id.* at 10. Therefore, the Court held that genuine issues of material fact existed regarding whether the Trust was an accredited investor. *Id.*

The Court specifically held that Plaintiff's Statements of Net Worth are inadmissible for two reasons. First, Plaintiff did not provide sufficient documentation supporting his net worth summaries. *Id.* at 9. For example, Plaintiff alleged that he owned real estate worth $3,171,400.00 in 2008 and 2009, but "failed to provide title or mortgage documentation

---

[7] United States District Judge Bruce D. Black authored the MOO. Subsequently, this case was reassigned to United States District Judge Kenneth J. Gonzales. *See* (Doc. 174).

regarding the value and/or purchase price of the real property he claims to have owned." *Id.* Second, the Court held that Plaintiff failed to address the admissibility of the underlying data upon which he relied to create his "Statement[s] of Net Worth." *Id.*; *see also* Fed. R. Evid. 1006.[8]  Consequently, the Court ruled that "[e]ven if the Court were to accept the reasoning in the SEC No-Action letters, … Plaintiff has nonetheless failed to demonstrate that he possessed a net worth in excess of $1,000,000 at the time of the transaction." *Id.* at 11. Hence the Court denied Plaintiff's Motion for Summary Judgment. *See Pinnacle Commc'n Int'l. v. Am. Family Mortgage*, 417 F. Supp. 2d 1073, 1086-1087 (D. Minn. 2006) (whether investors were "accredited investors" was not appropriate for summary judgment where evidence was unclear).

The Court also granted Defendant's Motion to Amend.[9]  Because Plaintiff relied on inadmissible evidence to establish his net worth, the Court held that Plaintiff has not established that the Trust was an accredited investor and, therefore, Defendants set forth sufficient facts "to state a claim to relief that is plausible on its face." (Doc. 161) at 13; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

   7.  *Plaintiff's Motion for Reconsideration*

Plaintiff now requests that the Court reverse its ruling in the MOO and grant Plaintiff's Motion for Summary Judgment and deny Defendants' Motion for Leave to Amend. Plaintiff provides the Court no significantly different arguments than those presented in his Second

---

[8] Rule 1006 states that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." A summary, based on data which has not itself been introduced into evidence, is admissible under Rule 1006 if the party establishes that (1) the underlying documents upon which upon which the summary is based are admissible, and (2) the underlying documents were made available to the other party for inspection. *Hackett v. Housing Authority of City of San Antonio*, 750 F.2d 1308, 1312 (5th Cir. 1985); *see also United States v. Samaniego*, 187 F.3d 1222, 1223 (10th Cir. 1999).

[9] On April 26, 2013, Defendants filed an amended answer and counterclaims. *See* (Doc. 164).

Supplemental Brief. Plaintiff again relies on the SEC No-Action letters to argue that the Trust was an accredited investor in October 2008 and 2009, because his net worth exceeded $1 million. However, Plaintiff provides the Court with new evidence that he claims proves his net worth is greater than $1 million.

Plaintiff now focuses on the value of only his real property and provides the Court with "verified true and accurate copies of deeds and titles" to eleven of his real properties.[10] (Doc. 165) at 3; (Doc. 165-2). Plaintiff also attaches a personal affidavit providing his own monetary valuations of the eleven properties. *See* (Doc. 165-1). He states that his valuations are "[b]ased on his knowledge as the owner of these properties, his experience investing in New Mexico real property for more than 40 years, and familiarity with the markets where his properties are located." (Doc. 165-2) at 1. Plaintiff states that the total value of his eleven real properties was $2,137,010.00 in 2008 and 2009.[11] Additionally, according to Plaintiff, in 2008 and 2009, there were three mortgages on Plaintiff's real properties, totaling $266,824.49 in 2008 and $236,481.90 in 2009.[12] (Doc. 165) at 4. Plaintiff next subtracts the value of the mortgages from the value his real property, giving him a net worth of $1,870,185.50 in 2008, and $1,900,528.10 in 2009. *Id.* Finally, Plaintiff claims that he possessed assets additional to the real property but had no other indebtedness. (Doc. 165) at 4. Hence, Plaintiff concludes that his net worth in October 2008 and 2009, was greater than $1 million, and, therefore, the Trust was an accredited investor.

---

[10] Plaintiff does not explain why he only included the deeds and titles to eleven properties, compared to the fifteen properties he claimed to own in his Second Supplemental Brief.

[11] Plaintiff lists each property individually and lists his estimated fair market value next to each. *See* (Doc. 165) at 3.

[12] Plaintiff provides the Court with a quarterly mortgage statement from October 2008 and October 2009 for a mortgage on one of the properties, 6325 Isleta Blvd SW, Albuquerque, NM. *See* (Doc. 165-3).

Regarding Plaintiff's valuation of his eleven real properties, Plaintiff argues that he is competent to testify as a lay witness about the value of his real properties. Plaintiff further contends that his valuations are definitive because "Defendants have no one who may offer rebuttal opinion to Plaintiff's evaluation of the real property listed above." (Doc. 165) at 5. Consequently, Plaintiff argues that he has met his burden by showing that he had a net worth in excess of $1 million at all relevant times and, as such, the Trust was an accredited investor.

Defendants respond by first arguing that Plaintiff's Motion for Reconsideration should be denied as procedurally inappropriate because Plaintiff does not cite to new law or provide new facts. Defendants additionally contend that Plaintiff seeks to make new arguments about Defendants being unable to rebut Plaintiff's real property valuations. Defendants contend that these new arguments are improper for two reasons: (1) Plaintiff could have made the arguments in the original briefing on summary judgment, and (2) Plaintiff's valuations are inadmissible because the summary and underlying documents are incomplete, full of inconsistencies, and inadmissible.

*B. Standard of Review*

The Federal Rules of Civil Procedure do not recognize a motion to reconsider. Therefore, the Court must construe a motion to reconsider in one of two ways: if the motion is filed within twenty-eight[13] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment. *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (citing Fed. R. Civ. P. 59(e)). When it is filed more than twenty-eight days after entry of judgment, it is treated as a motion for relief from judgment. *Id.* (citing Fed. R. Civ. P. 60(b)). In this case,

---

[13] Effective December 1, 2009, Rule 59 was amended to allow up to twenty-eight days to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e).

10

Defendants' Motion for Reconsideration was filed over twenty-eight days after the MOO was filed. Therefore, the Court construes Defendants' motion as one seeking relief under Rule 60(b).

A district court may grant relief from a final judgment or order under Rule 60(b) for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... (3) fraud, ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ... ; or (6) any other reason justifying relief from the operation of the judgment.

It is well settled that "a district court may grant a Rule 60(b)(6) motion only in extraordinary circumstances and only when necessary to accomplish justice." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996) (citation omitted). District courts have substantial discretion in connection with a Rule 60(b) motion. *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990).

*C. Discussion*

As discussed above, the main issue in Plaintiff's Motion for Reconsideration is whether Plaintiff has properly proven that the Trust is an accredited investor. The Court again finds the SEC-No Action letters persuasive. Therefore, if Plaintiff can prove, through the additional admissible evidence he has presented to the Court, that his individual net worth in October 2008 and 2009, exceeded $1 million, the Court may properly grant his Motion for Reconsideration.

Plaintiff contents that he has proven that his net worth is greater than $1 million because he has provided the Court with the deeds and titles to eleven real properties worth greater than $1 million based on his own valuations. Plaintiff additionally provides the Court with an affidavit of himself stating how he reached his valuations. Defendants contend, in part, that Plaintiff's

valuations are inadmissible because they constitute expert opinions, and Plaintiff did not make an expert disclosure of himself.

If Plaintiff's valuations are expert testimony and if he did not make an expert disclosure of himself, Plaintiff will have failed to provide the Court with admissible evidence that the Trust was an accredited investor. Therefore, to resolve Defendants' Motion to Reconsider, the Court must determine (1) whether Plaintiff's valuations of his eleven real properties are expert opinions; and (2) if so, whether Plaintiff disclosed himself as an expert witness.

*1. Whether Plaintiff's real estate valuations are expert opinions*

The admission of expert testimony is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). Such lay witnesses may, however, "offer observations that are common enough and require a limited amount of expertise, if any." *Id.* (internal alterations and quotation marks omitted).

There are three reasons why Plaintiff's real estate valuations are expert opinions. First, Plaintiff's testimony does not qualify as lay opinion under Rule 701. In *James River Ins. Co.*, the Tenth Circuit Court of Appeals illustrated the difference between Rules 702 and 701 with *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114 (10th Cir. 2005), and *LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004). In *Bryant,* testimony concerning elementary

mathematical operations was admissible as lay opinion under Rule 701 because "a simple average of 103 numbers, though technically a statistical determination, [was] not so complex a task" as to require an expert opinion "in order to deem the evidence trustworthy." 432 F.3d at 1124. In contrast, in *LifeWise,* testimony about a damages model which concerned moving averages, compounded growth rates, and S-curves was required to be offered by expert and not lay opinion. 374 F.3d at 928–929.

In the instant case, Plaintiff's real estate valuations more closely resemble the calculations in *LifeWise* than in *Bryant*. Here, the valuation of eleven diverse real properties - including houses, mobile homes, apartment complexes, and commercial rentals – is not within the common experience or observations of, or could be reached by, an ordinary person.

Second, Plaintiff's valuations were based in part on his professional experience in New Mexico real estate. In his affidavit, Plaintiff states that his valuations are based in part on "my experience investing in New Mexico real property for more than 40 years." (Doc. 165-1) at 1. Plaintiff also stated during his deposition that his valuations are based on his experience as a licensed real estate broker. *See* (Doc. 99-5) at 2 ("I used to be a licensed Realtor, so I have a fair idea of how to price stuff."). Plaintiff's reliance on his previous professional experience as a real estate investor places his testimony into the category of expert opinion. "[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *James River Ins. Co*, 658 F.3d at 1215.

Finally, "the Federal Rules of Evidence generally consider landowner testimony about land value to be expert opinion." *Id.* Indeed, the Rule 702 Advisory Committee's notes state that "[W]ithin the scope of the rule are not only experts in the strictest sense of the word, *e.g.*, physicians, physicists, and architects, but also the large group sometimes called 'skilled'

witnesses, such as bankers or <u>landowners testifying to land values</u>." (emphasis added); *see also Turner v. Murphy Oil USA*, 759 F.Supp.2d 854, 857–58 (E.D.La.2011) ("[T]he owner of real property may testify as to the value of her property.... Such testimony is to be deemed admissible as expert testimony under Rule 702." (quotation omitted)).

    2.  *Whether Plaintiff timely disclosed himself as an expert*

Having determined that Plaintiff's valuations are expert testimony, the Court must now decide whether Plaintiff timely disclosed himself as an expert. "[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under" Rule 702. Fed. R. Civ. P. 26(a)(2)(A). A party must make an expert disclosure "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). If a party fails to disclose an expert as required by Rule 26(a), that party cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ.P.37(c)(1).

Under the Court's initial scheduling order, Plaintiff was to disclose his experts by March 25, 2011. (Doc. 6). Plaintiff's Motion for Reconsideration does not sufficiently address or offer any justification as to his failure to abide by the Court's deadline for designation of experts and production of expert reports. Therefore, Plaintiff may not use his valuations to supply evidence for his Motion for Reconsideration.

In sum, Plaintiff's real estate valuations are expert opinions. Plaintiff, however, failed to provide Defendants with a disclosure of himself as an expert witness and has not proven that his failure was substantially justified or harmless. The Court, therefore, rules that his real estate valuations are inadmissible. Consequently, as in the MOO, there are genuine issues of material fact whether Plaintiff's net worth exceeded $1 million in October 2008 and 2009, and, thus,

whether the Trust was an accredited investor at those times.  Hence, Plaintiff has failed to present circumstances to justify Rule 60(b) relief.  Consequently, the Court denies Plaintiff's Motion for Reconsideration.

      IT IS ORDERED that Plaintiff's Motion for Reconsideration (Doc. 165) is DENIED.

_____
UNITED STATES DISTRICT JUDGE